**BOYNTON et al. v. SMITH.**

No. 3168.

Court of Civil Appeals of Texas.
Beaumont.

Nov. 27, 1937.

Rehearing Denied Dec. 8, 1937.

Claud J. Carter, of San Antonio, for appellants.

Marion R. McClanahan and Harry Hertzberg, both of San Antonio, for appellee.

O'QUINN, Justice.

Appellants, Alexander Boynton and Mrs. Emma Lindheimer, were plaintiffs below. They sued appellee, W. E. Smith, in county court at law No. 1 of Bexar county, Tex., to recover $927.28 alleged to be due them for pasture rent of certain lands situated in Medina county, Tex., because of holding leased premises over after the lease period had expired.

Appellee answered by general demurrer, special exceptions, general denial, and specially that at the expiration of the lease period he removed his cattle from the leased premises, surrendered to appellants the possession of the leased lands, and did not thereafter use same, and that if any of his cattle after said time got back on appellants' said lands it was not with the knowledge or the intent of appellee, but because appellants did not have sufficient fence around the said lands to prevent stock from entering same.

The case was tried to a jury; the court submitting only one special issue, which reads: "Do you find from a preponderance of the evidence that the defendant continued to use said land and to graze his cattle thereon from on or about the 20th day of March, 1935, to the 26th day of March, 1936?"

The jury answered "No." On this verdict judgment was entered for appellee, and we have the case for review.

Briefly the facts out of which this case arose are: May 18, 1931, Alexander Boynton, by written contract, leased to appellee

Smith for grazing purposes three tracts of land containing in all 2,250.3 acres; the tracts adjoining forming one body. The lease was for a period of three years, beginning March 20, 1931, and ending March 19, 1934. The rental price was 30 cents per acre per annum, which was paid as due.

The lease contained a penal hold-over clause, which read: "If Second Party (Smith) should continue to graze cattle on all or any part of these premises, or otherwise remain in possession of same after expiration or termination of this lease without written authority from First Party, Second Party shall be bound to pay for such use of said premises at the rate of Nine Hundred Twelve and 77/100 ($912.77) Dollars per year for the total time that the Second Party, his agents, representatives, or assigns should so remain in possession of all or any part of these premises without the written consent of First Party, and Second Party shall be considered to be and remain in possession of all of said premises as long as he shall have or leave any live stock thereon."

On March 26, 1934, appellant Boynton and appellee Smith entered into an agreement in writing to extend and extended the lease for a period of one year, or until March 19, 1935, under the provisions of the original lease, except 160 acres off the south end of the land were reserved, leaving 2,113 acres covered by the extension, for which a rental of 22.5 cents per acre was charged, amounting to $475.42. This rental was paid. On the expiration of the year ending March 19, 1935, appellee gave appellant Boynton notice that he did not desire further lease of the land, and removed his cattle therefrom. At that time the fences surrounding the surrendered leased premises were inadequate to prevent stock from entering at will upon the premises.

This suit was filed by appellants against appellee alleging that he had continued to graze his cattle upon and to retain possession of the land leased to him after the expiration of the lease period, invoking the penal retainer clause set out, supra. As before stated, the court submitted this question to the jury, and they answered finding against appellants, that appellee did not continue to use or graze his cattle upon the land after surrendering possession of same to appellants on March 19, 1935.

There was no objection to the issue, either as to form or substance. No other special issues were requested.

The record discloses that shortly before the extended year of the lease expired, appellant Boynton called appellee over the phone and inquired whether he would lease the land again, and appellee told him that he, Smith, did not want to further lease the land, and that he would vacate the pasture, and that at the expiration of the lease did remove his cattle therefrom. It further appeared that several persons saw cattle of appellee on the land on several occasions after it was vacated; the number of cattle being from two to six head, and from twenty to thirty head. Also, that under instructions of appellee, employees of his, whenever they saw any of appellee's cattle on the ground, drove them off and onto other lands being used by appellee. Appellee testified that after vacating the leased land he never saw any of his cattle on the land, and that he did not have possession of same, or use the land, for grazing purposes. During the year March 19, 1934, to March 19, 1935 (the year covered by the lease extension), appellee had about 700 head of cattle on the land, and during the three-year period he had about 450 to 500 head on the land. Near to and adjoining the land in controversy, appellee had several thousand acres under lease where he was keeping his cattle, and to which they were removed when taken from the premises leased from appellant Boynton. The condition of the fences around the land in controversy was such that stock could enter at will.

The evidence amply supports the finding of the jury that appellee did not, after the leased premises were surrendered and the cattle removed from same, continue to use the land or to graze his cattle thereon; nor did he have possession of same. Moreover, we think that as a matter of law the evidence shows appellee free from liability. The penal hold-over clause of the lease provided that: "If Second Party (appellee) should continue to graze cattle on all or any part of these premises, or otherwise remain in possession of same after expiration or termination of this lease without written authority," etc. It is clear, we think, that this language, when given its proper interpretation, could mean only that if appellee intentionally kept and grazed his cattle on

the ground, or intentionally continued to hold possession of the land, then he would be liable as provided. It is clear, from all the facts and circumstances in evidence, that appellee did not intentionally cause his cattle to go again upon the land, and certainly he did not retain possession of same, for he not only removed his cattle from the land, but told appellant Boynton that he would not further lease the land, and, also, that he would remove his cattle off of same, which he did, thus completely and fully surrendering the premises to appellant. But it is insisted that the lease further provided "that Second Party shall be considered to be and remain in possession of all of said premises as long as he shall have or leave any live stock thereon," and as some of appellee's cattle occasionally were found on the land, therefore liability under the contract attached. We think this contention unsound. The reasonable construction of this clause must be found in considering it in connection with and as a part of the whole contract. This being true, the words "shall have," and "or leave" any live stock thereon, meant that appellee intentionally had the cattle on the land for grazing, and had intentionally left (failed to remove) cattle on the land for purposes of using the land for grazing. There is no evidence, as we view the record, showing such intent. The land was leased for the purpose of grazing cattle thereon. When the lease expired, if appellee caused his cattle to go upon, or if he left his cattle on the land, it could be only for the purpose of their grazing the land. So, as we see it, the intent of appellee is the main point for decision. The jury correctly passed upon this question, and the evidence, viewed in the light of the contract, supports their finding.

Appellant complains that the court committed reversible error in refusing to permit him to file a trial amendment for the purpose of alleging that the stock law (Vernon's Ann.Civ.St. art. 6954 et seq.) was in effect in Medina county (where the land was situated), and therefore appellant was under no duty to fence his land, and the fact that the fence around the leased land was inadequate to turn stock was no defense against cattle of appellee going upon and grazing the land, under the lease. The case had been on trial for some three days. The evidence for both sides was closed. Appellee objected to the filing of the trial amendment because the case had been tried on the theory, under the pleadings, that there was no special stock law in force in Medina county, but that the general law applied; that the filing of such pleading would perhaps necessitate further pleading on the part of appellee to meet this new issue; that time to investigate relative to the adoption of such law in Medina county would be required to meet the issue, and thus delay the trial of the case; that diligence on the part of appellant was lacking in not sooner pleading the special stock law, if same existed, and that appellee was not prepared to meet the issue. The court sustained the objection, and refused permission to file the trial amendment. This is assigned as error. Filing such pleading was within the discretion of the trial court, and, unless the court abused this discretion, the ruling was not error. Continental Paper Bag Co. v. Bosworth (Tex.Com. App.) 269 S.W. 83. Under the facts, we think no error is shown. If it could be said that it was error to refuse the trial amendment, still we think it would be harmless error, for in that the provision in the lease contract invoked by appellant, and upon which he based his suit, as we have held, under the undisputed facts, affords no basis for the suit.

The judgment should be affirmed, and it is so ordered.

Affirmed.